Case number 21 3504 Southern Iowa Essence Welch versus Daniel Dempsey All right, mr. Haraldson. We'll hear from you first Thank you may please the court my name is John Haraldson I represent in this matter officer Dempsey and the city of Des Moines This case is unique in that it really presents a fairly limited question for this court's perusal but it's one that involves the First Amendment and It this case has been ruled upon Summary judgment was dismissed on the Fourth Amendment claims in this matter. There is a remaining state assault claim That's not part of this appeal because it's strictly under state law But we're here to regarding the issue of Ms. Welch's claim of First Amendment retaliation and specifically this case Involves in that three-factor test because this case did not involve an arrest nor an intent to arrest So it involves the third factor of the First Amendment retaliation claims. There's Perhaps some factual dispute, but it's a factual dispute About whether or not Ms. Welch was engaged in legitimate First Amendment activity No doubt taking part in the protest was a legitimate First Amendment activity But the issue about whether her actions related to being parallel to the scrimmage line perhaps Was part of going too far in a First Amendment claim, which is really related to the third factor Pepper spray was used against her There's no factual dispute that for a reasonable person pepper spray would probably be a deterrent in a changing in First Amendment activity Regardless of the subjective evidence of Ms. Welch who obviously didn't enjoy being pepper sprayed but shortly thereafter After being treated was laughing about it, but that's not indication that she asked to be pepper sprayed She testified that this was that she was not a regular protester and didn't protest afterwards. So it comes to the third issue of Retaliation claim which was that the action of Officer Dempsey in pepper spraying Ms. Welch was motivated by her protective activity That's from a long line of cases most recently I believe affirmed by this by the Eighth Circuit in just versus the city of st. Louis and it stems out of the Supreme Court's Nebby's case in 2019 which talked about how the standard on that third issue Becomes sort of a but-for question as far as the motivation of the officer the plaintiff has to prove that but-for Her protected activity that the protected activity was a substantial reason for the use of force and If she cannot show that then that third factor hasn't been met which sort of sets the traditional Clearly established test for qualified immunity a little bit on its head Because it puts sort of an affirmative effort on the part of the plaintiff as opposed to the defendant in this case in this matter there was a This took place the applicable facts of this case took place in about a 15 to 20 minute period you sort of have to piece together the the dispatch Information the body cameras there were news crews there One of the news crews I think may have stopped their camera on and off so you don't get a one to one minute Thing but I think piecing it together in a period of about 15 to 18 minutes we go from a situation where there was a crowd of about 200 to 300 protesters a Few of which not the majority by any means most of these individuals engaged in peaceful protest But a few protesters one specifically who later pled guilty to an attempt at arson charge broke windows in the County Courthouse, which is across the street from where these events have actually occurred and Tried to set the building on fire not successfully By I believe using firecrackers There the video shows that some of the protesters tried to prevent this there were arguments But nonetheless this caused reports to come in to the police That there was an attempt to do property destruction of the courthouse and concerns that the courthouse was on fire Turns out that it that it didn't actually reach that point Surprisingly, it's hard to burn down a building with firecrackers made of marble and concrete, but still there was property damage shortly thereafter the remaining protesters Moved on towards in the direction of where a police scrimmage line had started which was protecting the what the county had built of their new criminal courts building and unlike the Historical County Courthouse where the this attempt at arson occurred was a building like a lot of modern buildings made mostly of glass so a scrimmage line was set up of Officers and an increasing number of officers were called to protect that scrimmage line It appears that the protest group increased a little bit. There were some estimates of about 300 Over the next 10 minutes or so the crowd went from being about 15 feet away from the officers To essentially being face-to-face with them there were statements made and calls that denigrating the police and making statements But again, we don't contest that's not within their First Amendment rights and there was limited to no Well, there was virtually no reaction from the police. They maintained their scrimmage line, but well these events were occurring Officer Dempsey and a group of other officers who are on standby were dispatched to the area and There was with orders to disperse the crowd if Necessary at the time by the time officer Dempsey got there Which was a few minutes after he would been dispatched with a group of other officers in a van He pulled out and the bulk of the protest had started to move to the west along Cherry Street But there were some people that stood that were straggling and it can be seen video There were even some people coming back, but most of the protesters had moved on But from officer, but that but from officer Dempsey standpoint, there was an individual that was within parallel to or next to the scrimmage line and you can see both in the Video camera that ms Welch was taking as well as body camera from both Scott Newman and another officer named Ryan Newman not related That it's apparent that ms. Welch was was at least amidst the police scrimmage line. Is that a problem? I mean, that's that's that's the thing So the protests moved on right he's not dispersing and she's in a potentially dangerous position from the standpoint of the officers the address from the standpoint of the officer officer Dempsey testified his concern is that if Individuals start go moving inside the police scrimmage line and it poses potential danger to the officers and this which is I think Most of the cases involving retaliatory arrest are different than this particular case If this case has an analogy of Eighth Circuit cases, it's probably in the Qureshi case which involved the use of force against Noted and known press individuals from a distance But none of those people were arrested likewise in this case the intent of officer Dempsey was not to arrest ms Welch but to disperse her to move her off of the line. And so I actually think the closest analogy might be White versus Jackson In the sense that there a car came in and in an area that had already been dispersed kind of like here and we held There that the officer it's not directly on point But they could have reasonably concluded that the car's occupants were cognizant of the unlawful acts being committed by the other members the assembly Yet disregarded the instructions to leave the area same thing here She stayed near the scrimmage line and didn't disperse despite the fact everyone else had yeah and to be fair to miss Welch I think the evidence is clear here that this was sort of I Don't know exactly what the organization was on the on the protesters I assumed there was probably some sort of an informal leadership We can be seen on the on the audio display I believe from officer Newman, but I think it also be heard on other officers and maybe on even on miss Welch's camera Shortly before this whole incident occurred one of the I guess informal organizers formal I don't know told her let's move. Let's move on. Let's move now. If you stay here, it's on you and Miss Welch, I think was probably caught up in the moment of being on Facebook live and commenting with her people and And just was commenting on what she saw from the officers perhaps got too enthusiastic and move within the line I I don't think that there's any evidence that miss Welch was trying to cause trouble But officer Dempsey was not the perspective to know what her perspective was He just arrived on the scene with the indication that the crowd should be dispersed There was dispersing but some people were remaining and here's one person within the police line So the use so he didn't intend it wasn't his intent was not to arrest her his intent was to disperse her and So he fired a pepper spray now in her video where she makes the comment Oh here I think something along here comes somebody right now and you literally just because of the direction of the video It looks he fires. It looks like he fires right into her but the situation was that she was within that scrimmage line and The limited nature and again in this case you have the whole limited nature of body cameras Officer Dempsey has testified to he that his recollection is he observed individuals throwing water bottles and other material And I think if you look at the body camera image you can probably see Various things on the street near the officers, but you don't necessarily see them thrown active at a time I think a few minutes before that there was a water bottle thrown, but that was before officer Dempsey arrived But the body cameras don't capture everything they have a very limited perspective and in this case That's oftentimes limited by the shields of the officers So I I believe that judge Strass is right that the white case Has an analogy here the but the I think the the most recent case the Qureshi case Involving the protests in st. Louis. I think it was in 2014, but finally went to court And or had decision more recently involved the situation where press individuals were were Separated and apart from the police they were in a section where a protest was occurring But sort of isolated off by themselves although other people were in their vicinity But the body cameras seem to detect that those officers Particularly seem to target those individuals even though they identified themselves as pressed even though it was apparent that they were pressed That there was no warning from the police officers to disperse that they were pelted not with pepper spray they were pelted with tear gas and rubber bullets and the officers could not come up with a For their actions as opposed to here where officer Dempsey has testified and Without it being rebutted with any affirmative evidence other than speculation that the basis for his effort and his effort to disperse the individuals was because here was an individual he gets off the truck and sees an individual in The scrimmage line and want and needs to disperse them the only evidence that was Presented in this matter and uniquely. I think it was sort of I think it's speculative evidence by the court itself that Officer Dempsey is seen testing out the equipment as he's getting out of the car that for Indicates an evidence to use it against miss Welch. Well, that's pure speculation That's no the use of The use of testing out equipment does not indicate specifically that it's going to be utilized by the officer involved If the court has no other questions, I'll reserve my time All right. Very well. Thank you for your argument All right, miss Mesimer we'll hear from you may it please the court and counsel This is one of the first civil rights cases arising out of the George Floyd protests to reach the circuit level But the issues in this case are not issues of first impression the First Amendment principles That issue in this case are clearly established and that's likely why defendants didn't challenge that element of qualified immunity at the district court level Defendants waive that argument and now on appeal attempt to just relitigate the facts That's not the purpose of a qualified immunity appeal and this case should there be therefore be dismissed because it's jurisdictionally barred Beginning with the issue of defendants waiver Defendants cite the law of qualified immunity in their brief at the district court level Just generally speaking and then they go on to discuss the two claims that miss Welch raised Within those sections. There's no argument as to whether or not the law was clearly established And the district court relied on that the district court acknowledged that defendants did not Except in passing mention the clearly established prong of qualified immunity And therefore the district court decided the general standard that retaliatory actions are It's clearly established. The law enforcement can't retaliate based on First Amendment activities. It's not too broad No, that's not too broad. Even if the court were to reach the merits of the qualified immunity or clearly established issue No, the case law is very clearly established that law enforcement can't take retaliatory actions based on First Amendment activity and I think maybe the easiest case to cite for is the Peterson v. Cop case because that case particularly acknowledges You can't use retaliatory. You can't retaliatory arrest someone for First Amendment activity. Also, there's a separate analysis They can't use retaliatory force against someone either. So that's been long established. I think the Hiroshi case Collects a lot of cases that discuss that principle Well, the reason why I ask that is because it's Arguably any protest case then would go to a jury if there's a First Amendment retaliation claim, right? Because you could you could infer that if you are speak if you're at a protest you're engaged in First Amendment protected activity No matter what the plaintiff is doing Whether the plaintiff is doing something else. That's why I asked the question because the plaintiff could be beating somebody could be throwing rocks And you could still make the argument well, it's it's a retaliation for speech or at least there's a fair inference from the facts. I think on the facts where it comes down to where you distinguish between Legitimate uses of force or arrest versus one where there is a jury question. It comes down to The Supreme Court has recognized if a use of force is unjustified Then there could be an inference that it was retaliatory and that's where this case lands, I think Because if you have an officer who's doing something That's just not justified then a jury could infer it was retaliatory and here the facts do support that what officer Dempsey did was unjustified So you would add unjustified to the to the what the clearly established right is potentially You have a clearly established right for First Amendment But certainly there somebody would have qualified immunity for if there was a justified use of force Yes, I think that comes down it falls within the analysis of whether or not there was Evidence that this is what motivated the use of force. I think that kind of isn't encompassed within that How would you characterize his actions? gratuitous violence Yes, excessive certainly and here the excessive force claim failed because there wasn't a seizure But that's part of the analysis kind of for the First Amendment claim as well so Nobody ever quotes Prosser anymore in torts about the officious intermeddler. Was he an intermeddler? No, you don't have to answer that I Have to admit I'm not even exactly sure what an intermeddler is, but I would say I'm imagining that thing I would say that the facts you said you think that the city is Challenging the facts that the district court assumed and that we would not have jurisdiction to consider that What did you have in mind there? Well, there's ample case law saying no, I mean, I know the law But I mean what facts do you say were assumed by the judge that the city is asking us to revisit? Some of them that I would point out that mr. Harreldton also brought up in his argument today number one His argument is premised a lot on Miss Welch being inside the scrimmage line that was a disputed fact and actually it was in our statement of Undisputed facts which the city did not respond to that. She was not within the skirmish line She was about 10 feet away from officers The video shows this and that she wasn't within a span where she was doing anything threatening or would be perceived as a threat to officers So that actually was undisputed I think the judge's opinion relied on your version of the facts there I believe the only comment the judge made on that was that Miss Welch was in line with the skirmish line or abreast of it. There was no finding that she was within it So I think that the court should set aside that fact in evaluating defendants argument Another thing is that the defense relies on People were throwing things at officers and Dempsey reasonably believed things have been thrown to officers That's quite the opposite of what the district court found the district court found when you look at the video There's nothing thrown and there's actually then a basis to conclude the officer Dempsey lied about that a jury could conclude that Also the defendants brief cites the fact that there was a riot going on and he perceived there was a riot That's not what the video shows That's not what the district court found The district court found there were facts from which a jury could find no riot was happening the scene had settled down Most everyone had left and there were only a few people who were actually outnumbered by officers at that time Another fact the defendants rely on that is simply irrelevant and the district court found it irrelevant Was the fact that Miss Welch had been around when the person broke the window at the courthouse? That's not a fact that officer Dempsey would have been aware of and so in looking at these Whether or not there was a basis for him to pepper-spray her you have to think about what did he actually know and he had No knowledge of those facts. Those are things found in hindsight based on a review of the videos So the district court set those facts aside as well Okay, I would say those are the main ones on that on the on the earlier issue that I think judge woman was getting at I don't want to mischaracterize what he says, but the inner meddler She's near we can say she's very near the scrimmage line. She's out of place with the rest of the protesters who have moved on Why isn't that a problem everyone else dispersed and She's in a they think it's she's in a dangerous position at the very least shouldn't there be qualified immunity? based on cases like white versus Jackson One thing I would say that clearly distinguishes from right versus Jackson is there was no order to disperse So this was not a situation where officer Dempsey could say that miss Welch was Disobeying some order that had been given because that didn't happen these people all voluntarily left and she was still just hanging out around there Second of all, there are facts from which a jury could conclude that no reasonable officer would have thought she posed a threat She's outnumbered by officers Officer Dempsey has to step around a bunch of officers in order to get to her to pepper-spray her and he he didn't take any time To evaluate the scene or to give her an order to disperse Nothing like that was done. There was just this direct action without any evaluation of the circumstances when actually all the objective circumstances would Lead someone to conclude this person does not pose a threat. It's merely an observer at a political protest So those are facts that the district court relied on to say there's a material fact dispute here that warrants and how long is Dempsey? on the scene before the spray was Employed just the district second. Yes, it was 12 to 15 seconds He got out of the van and these other Officers that he went around they had been standing there with Welch for some time before he arrived. That's correct I would say there are at least 20 officers there in this line The crowd had mainly cleared and then she was around 10 feet away He walks up he gets out of a van behind the officers that are in the line Walks up has to go around them. And the first thing he does is pepper-spray miss Welch in the face. I Have enough trouble with the English language and there I know I never tried Latin Did he defend them trying to think of the flat? Did it defend his sense of personal propriety or something that it was an affront to him as a human being? Officer Dempsey. Yeah Well, I guess that's not a legal question, but it's There are officers and then there are officers and he was who he was And that's what I think something offended him I agree and I think that that's something the jury could infer based on the circumstances When this use of force was not justified they could conclude He was personally bothered perhaps by this nature of the protest and the nature of the speech and that's what motivated him to be so From This is where a reasonable officer could conclude I'm just quoting from the case that it involved threatening a threateningly approaching a police line Which I know we don't have here And potentially blocking traffic. We may or may not have that here Violated Minnesota law and was not protected speech any reaction to that case. It seems like You know, you could at least make an argument that a reasonable officer might look at that case and say well This is kind of on the line between proper and improper use of use of force I Would distinguish that case number number one. She wasn't in the street. She was on a public sidewalk So that's the first factor and I think it's also worth emphasizing That we're talking about retaliatory use of force not retaliatory arrest because he made no effort to arrest her And so in this type of case Whether or not there's probable cause isn't an element that plaintiff or that would defeat plaintiffs claim And that's Peterson v. Cop kind of talks about that That's a separate analysis where you've got the use of force probable cause wouldn't defeat the retaliatory use of force But here defendants actually conceded before the district court and district court acknowledges in its ruling that there wasn't probable cause to arrest Miss Welch There's some discussion of whether or not he could have thought there was arguable probable cause that she was involved in a riot But if you look at the elements of that claim, there wasn't any probable cause or arguable probable cause there Wasn't a riot going on when he got there and Number two, the Iowa Supreme Court has held that to arrest somebody for that You have to have that they were actually participating in the violence There's no evidence to support that Miss Welch was doing that There's no reason for officer Dempsey to to feel that way So even if the court does think about whether there was probable cause in Evaluating whether she was engaged in first-minute activity that simply fails here because the facts don't support any probable cause Another typical Crime that comes up and is discussed in these cases is whether or not somebody could be arrested for failure to disperse Again, there was no order to disperse so you couldn't arrest someone for that And otherwise that there just wasn't any other crime that the officer could have thought that she was Engaged in what about unlawful assembly under Iowa law? Still again, there wasn't an assembly taking place. She wasn't engaged in In any assembly at the time and when he's coming in with such a short Span to even observe what's happening. That's not enough to justify Just by what he did and again I think the only way this kind of fits into the court's analysis is as to whether or not she was engaged in protected activity And certainly there's a jury question as to that element But ultimately as mr. Hilton acknowledged The defendants argument has to do with this third factor. Was there enough evidence for motive and this court has said Interlocutory appeals aren't for I mean the judge here said that a jury could infer a Retaliatory motive and that would seem to be a question of evidence efficiency. I completely agree and So here we've got one element of the qualified immunity analysis That's been waived clearly established pronged and then we've got the second element whether or not there was a constitutional violation and that's jurisdictionally barred So the court just doesn't need to reach the merits here But even if the court does the district court got it, right and there is a fact question for the jury Well, let's say the clearly established issue is not waived do you have anything more you want to say about that Not in particular I think that defendants even in their appellate brief They'll mention that it wasn't clearly established, but there's not really any substantive argument on there. It's more of just a buzzword thrown out Here, I know it is a general rule, but it's fairly easy to follow Don't have a retaliatory motive in your head when you go and take action against someone if there are enough facts that a jury could Find you had that motive Then that's too bad. This is going to the jury for the jury to decide If the claim is valid or not Well, suppose there was some Crime the person was committing but the judge says the jury could infer retaliatory motive Would that be enough to defeat qualified immunity? And Your hypothetical is there a use of force are you saying just simply for the arrest the use of force Does it turn on whether there's a reasonable basis to believe The plaintiff was involved in some unlawful activity or does the motive itself? defeat qualified immunity Motive itself would defeat qualified immunity and Peterson v. Kopp is the perfect example of that there was arguable probable cause for the arrest, but then the court looked at the timing of This plaintiff had questioned the officer and asked for his badge number and then was pepper-sprayed immediately afterwards and the timing of that allowed the court to say no qualified immunity on the First Amendment claim that can move forward even though your illegal seizure claim and Retaliation based on the arrest could not move forward And One last case I'd like to cite to the court is Tatum v. Robinson, that's a case in the illegal seizure Realm, that's the store key. Yes it is but it's kind of analogous here because the court said a Jury could find there was excessive force based on the timing of when the officer pepper-sprayed the individual Even though the individual was confrontational didn't comply with commands They said the officer made this decision pepper-spray within 15 seconds and a jury could find that unreasonable I think that kind of corresponds to the timing issue here and could allow it supports the fact the district court's conclusion that there was a fact question So we asked the court to dismiss the case for lack of jurisdiction But alternatively if the court reaches the merits the district court should be affirmed. Thank you All right. Thank you for your argument I Think it's important to look at the importance of video evidence over the dispute of where ms. Welch was in the scrimmage line Because as ms. Messimer said the evidence is the video evidence shows that she was on a public sidewalk Well, that's where the scrimmage line was And if you look at the videos of officers the both officers Newman You will see the placement of where the officers are and if you look unfortunately because of a time lag and how Well, I'm speculating. It's a time like sometimes it takes a bit of time for body cameras to be activated or officers Don't there's no there's no body camera of officer Dempsey approaching Ms. Welch, so you have so you have to put together the video from the other officers But if ms. Welch is astride a public sidewalk, that's where the police officers are And so when officer Dempsey removes himself from the van He sees an individual the only individual not like Horatio where there were other people in the area But they seem to target this particular press group, but the only visual so there's no comparator here The only visual that is not following along In at least at a distance from the rest of the officers She is right there at the scrimmage line and I think if you look further at the cases and what's the basis to use force against somebody just because they're in the vicinity of a scrimmage line if there's no order to disperse or Well or other basis to say they shouldn't be on the sidewalk Because it's it's it's from the Walker case on it's well established that well Ms. Welch could have been on the other side of the street and and Filming the officers or whatever. She's not allowed to film and interfere with the officers operation of their job And that scrimmage line is the officers job Maintaining the scrimmage line at that building by Ms. Welch being within that scrimmage line Whether she's a few feet outside of it or a few feet inside of it or a stride of it She is if she is a potential threat or is breaching that line and present and Presenting a threat to the officers and how they conduct their duty in their training It would be as if she was close by filming and commenting to an officer and questioning officer Well, they're arresting someone it's maybe less active than that But she has to have some awareness of what officers jobs are and furthermore The thing about the third requirement of the retaliation claim is she has an affirmative duty this makes it different Than other cases and why I said earlier is sort of is a mere image of qualified immunity She has an affirmative duty to put forth evidence of motive There is no evidence of efficiency question if the judge found there was sufficient evidence for jury and for motive Is that reviewable? It is when that one piece of evidence is him shaking or Testing out the pepper spray before he ever sees miss Welch, that's that's just that's speculation. That's not an affirmative piece of evidence of Question you're saying the evidence is insufficient That's but I'm asking you a different question, which is are we able to review whether the evidence is sufficient? you're able to review it when the when the duty imposed on the plaintiff in that situation is an affirmative duty to show a Retaliatory motive to show that there's evidence of that motive. That is not evidence of motive. That's speculation Okay, could I ask one more question? I wanted to ask Opposing counsel says you waived the clearly established right analysis. That is really important to me and I'd like to hear your answer Well, first of all, we did it We briefed the issue of qualified immunity both in general and then the fourth amendment and the fourth amendment standards are similar to the first Amendment standards when it comes to clearly established But it was it was briefed generally both as the standard for summary judgment and qualified immunity and then within the brief and the court Addressed it within the opinion second of all the cases that she relies upon in particular Wiser which was a case where the appellant actually argued the opposite of what they asserted below and the other cases cross Where they not only didn't argue qualified immunity didn't assert it as an affirmative defense, which we have done So those cases are well astride of what's different here. This is this is an attempt to over State the effect of what happened in the briefing, which is that qualified immunity including clearly established was discussed but again that relates back again to this sort of weird component of A first amendment retaliation claim. No one is disputing that the right to protest is clearly established but within that right to clearly establish the plaintiff has to show affirmative evidence of The retaliatory motive on the basis of the officer if there's no other questions. Thank you for your argument Thank you to both counsel. The case is submitted. The court will file a decision in due course